COLL, PETICIONARIO Y APELADO, *v.* ARZUAGA, DEMANDADO
Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 2ª., en un recurso de *Mandamus.*

No. 1454.—Resuelto en julio 28, 1916.

MANDAMUS—EXAMEN DE LIBROS, CUENTAS Y CONTRATOS DE UNA CORPORACIÓN POR UN ACCIONISTA—NEGATIVA DEL DEMANDADO.—Cuando en un recurso de *mandamus* presentado por un accionista contra el presidente de la corporación para que le permita examinar los libros, cuentas y contratos de la corporación, y tomar las notas que estimare conveniente, no se demuestra que tal solicitud se hiciera previa y debidamente al demandado ni que éste se negara a ello, no puede sostenerse la expedición del auto.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Eduardo Acuña y Henry G. Molina.*

El apelado compareció en nombre propio.

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

El demandante y apelado, que es dueño de treinta acciones de la Compañía Azucarera de Carolina, y que al parecer representa en cierto modo, o de alguna manera tiene bajo su control, doscientas diez acciones pertenecientes a Don Car-

los Cabrera, obtuvo en la Corte de Distrito de San Juan un auto de *mandamus* contra Pedro Arzuaga, presidente de la compañía, en el que se le ordena que tenga a la disposición del demandante, para su examen, cualquier libro o documento que dicho demandante solicitare y que fuere propiedad de la Compañía Azucarera de la Carolina, señalando sitio y hora conveniente para estudiar dichos libros y documentos y tomar las notas que estimare convenientes.

La declaración del peticionario en el examen de repreguntas termina con la admisión de que estuvo presente en la junta general de accionistas de la corporación que se celebró en julio 1, 1914, aprobando todo lo que se hizo y haciendo la siguiente explicación de la actitud que observó en aquella ocasión:

"P. ¿Cómo es que entonces Ud. conoció el estado?—R. No lo había conocido entonces, es otra historia que se la voy a hacer además * * *.

"P. Eso es inmaterial. Entonces, cuando Ud. aceptó los informes, el informe de los directores, y las cuentas, en la junta general de accionistas en 1914, Ud. lo hizo a pesar de que no conoció * * *.— R. No, señor, no lo hice a pesar de que no conocía; lo hice porque el Sr. Arzuaga me compró trece mil pesos de bonos que tenía yo y me los pagó a un precio que era muy bueno en aquella oportunidad, y como eso era lo que me interesaba, no tuve ninguna oposición, como no hubiera tenido ninguna si me hubiera comprado mis acciones que es lo que yo intereso."

En 10 de junio, 1915, el peticionario escribió una carta a Don Eduardo Acuña, abogado del demandado y apelante, la cual es como sigue:

"MI QUERIDO DON EDUARDO: Hace ya un año que efectuamos la negociación de los bonos de la Central Progreso, dejando para más tarde las acciones. Al hacerse el negocio parecía malo para el Sr. Arzuaga y bueno para Don Carlos. Luego vino la guerra y resultó malo para Don Carlos y bueno para Arzuaga. Son las alternativas del negocio y yo me alegro mucho que Arzuaga no haya perdido dinero en la transacción.

"Ahora bien, cuando nosotros efectuamos esa operación, no tratábamos simplemente de la venta de los bonos, sino de una reorganización de la compañía que llevaríamos a cabo entre Ud. y yo si no se compraban las acciones del Sr. Cabrera; y si, por el contrario, no le convenía a Sobrinos de Ezquiaga la reorganización, nos comprarían entonces las acciones.

"Yo tengo (30) treinta acciones mías personales en Progreso; y estoy pendiente de arreglar unas cuentas con Don Carlos, en cuyo caso tendré todas sus acciones o sean (210) doscientas diez. Yo necesito terminantemente llegar a un acuerdo antes del 30 de junio con Sobrinos de Ezquiaga, bien sobre la reorganización de la compañía, de manera que el papel tome algún valor efectivo, y bien sobre la venta de estas acciones.

"Contra toda ley y contra los principios más fundamentales del derecho de corporaciones, son agentes fiscales para su propio provecho de la Central Progreso, Sobrinos de Ezquiaga. Es decir, que una sociedad mercantil cuyo socio gestor es el mismo Sr. Arzuaga está haciendo de agente fiscal de una corporación cuyo presidente es el mismo Sr. Arzuaga. La ley es clara en ese sentido y todos los beneficios, hasta el último centavo que Sobrinos de Ezquiaga hayan podido obtener en sus transacciones con Central Progreso tendrían que serle devueltos a la central, si cualquier accionista así lo solicitare en la Corte Federal. Yo no quisiera tener que ir a esos extremos; pero estoy dispuesto a hacer valer mi papel, bien poniendo la compañía sobre bases sólidas y reales y con una administración independiente, o bien realizándolo.

"Le suplico trate esta cuestión lo más pronto posible; y en espera de su contestación, sabe que le aprecia,

"Suyo affmo. amigo y compañero,

"(Firmado)          CAY. COLL Y CUCHÍ."

Después de esta carta y en junio 15 el peticionario le escribió otra carta que dice:

"MI QUERIDO DON EDUARDO: El Juez de la Corte Federal se embarca a fines de este mes o a principios de junio; y yo quisiera tener resuelto el asunto de las acciones de Carolina antes de que esto sucediera, bien en un sentido o en otro. Tengo miedo que esto trascienda al público caso de que lo demoráramos; y que considero el caso muy serio y desearía antes de decidirme a poner una demanda tratar de llegar a un convenio.

"Si Ud. quiere que hablemos sobre el particular, estoy siempre a sus órdenes y no tiene nada más que telefonearme.

"Suyo affmo.,

"(Firmado)　　　CAY. COLL Y CUCHÍ."

Al día siguiente se dirigió a Don Pedro Arzuaga directamente, en esta forma:

"MI DISTINGUIDO AMIGO: Hace algunos días escribí a nuestro mutuo amigo Don Eduardo Acuña la carta cuya copia le acompaño. Se trata, de un asunto de alguna importancia y trascendencia, y yo quiero resolverlo pronta y amistosamente. No teniendo contestación le escribí una notita el día 15 al Sr. Acuña recordándole mi anterior; y hoy recibí una carta que copiada literalmente dice así: 'Estimado Amigo y Compañero: Yo no voy a resolver por mí el asunto a que se contrae su carta fecha 15 y. la anterior, estoy ocupándome en estos momentos en negocios exclusivamente míos y no puedo bajo concepto alguno dejar de atenderlos, declino por tanto toda·intervención en este asunto y en este sentido actúe Ud. como le convenga. Sin otro particular quedo de Ud. atto. amigo y compañero, (Firmado) Eduardo Acuña.' Como Ud. comprenderá, una vez declinada toda intervención por el Sr. Acuña, tengo necesidad de entenderme directamente con Ud. Y le suplico que a la mayor brevedad posible dentro de sus muchas ocupaciones considere este asunto porque yo estoy irrevocablemente resuelto a solucionar la situación de "Progreso," si no puedo ·deshacerme de mi papel y del que tengo tratado con el Sr. Cabrera o sean (210) doscientas diez acciones aunque para ello tenga que ir a la Corte Federal.

"De Ud. atentamente,

"(Firmado)　　　CAY. COLL Y CUCHÍ."

En junio 25 contestó Arzuaga lo siguiente:

"MUY SEÑOR MÍO Y AMIGO: En contestación a su muy grata 16, del corriente, paso a informarle que no intereso comprar las acciones del 'Progreso' que me ofrece.

"De Ud. affmo. amigo y S. S.,

"(Firmado)　　　PEDRO ARZUAGA."

En el mismo día el peticionario escribió al Sr. Sosthenes Behn, secretario de la compañía, la siguiente carta:

"MUY SR. MÍO Y AMIGO: Con fecha 23 de junio escribí a Ud. oficialmente la siguiente carta:

　　　　　　　　　" 'SAN JUAN, P. R., *junio 23, 1915.*
" 'SR. SECRETARIO DE LA COMP. AZUCARERA DE LA CAROLINA,
　　　　　　　　　　　　　　" '*San Juan, P. R.*

" 'SEÑOR: He recibido una notificación para asistir a la junta general ordinaria de accionistas de esa compañía que se celebrará el día 1º. de julio de 1915.

" 'Necesito con anterioridad a esa fecha por lo menos con cinco días de anticipación, una oportunidad para revisar el libro de actas de la compañía durante los últimos dos años, tanto el de las juntas generales como el de la directiva, y también necesito examinar los balances y la contabilidad del último año.

" 'A ese fin deseo que Ud. me señale con la debida antelación un par de horas donde tenga yo a mi disposición en los oficinas de la compañía dichos libros; debiendo indicarme también a qué hora podré examinarlos.

　　　　　　" 'Suyo affo.'

"Aun no ha tenido contestación y le suplico me indique en el término del día de hoy si es o no posible lo que yo solicito dentro de una forma amistosa, de lo contrario recurriré a los tribunales.

　　　　　　"Atentamente,
　　　　　　　　" (Firmado)　　　CAY. COLL Y CUCHÍ."

Al siguiente día dirigió el peticionario la siguiente comunicación a Arzuaga como presidente de la compañía:

"MUY SEÑOR MÍO Y AMIGO: Desde hace varios días estoy tratando de conseguir que el secretario de esa compañía ponga a mi disposición los libros de la misma sin haberlo conseguido.

"Me dirigí primero al dicho secretario en carta que se entregó a un empleado de Sobrinos de Ezquiaga y que no fué contestada. Me dirigí luego en carta al Sr. Sosthenes Behn, el cual me dió a entender que no sabía nada de la secretaría. No he podido ponerme en comunicación con el Tesorero tampoco.

"Como todo esto es bastante extraño encontrándonos en vísperas de una junta general de accionistas, acudo a Ud. para que me indique a qué hora el día 30 por la mañana podré examinar los siguientes libros:

"Libro de actas.

"Libro de contabilidad.

"Contratos con los colonos.

"Informe de la Central Progreso en la zafra de este año.

"Si antes de las nueve de la mañana del lunes no he obtenido una contestación favorable, me veré obligado a recurrir a los tribunales de justicia.

"Muy atentamente,

"(Firmado)         CAY. COLL Y CUCHÍ."

En la misma fecha contestó Arzuaga como sigue:

"MUY SEÑOR NUESTRO: El que suscribe acaba de recibir su carta de esta misma fecha, en contestación a lo que en ella interesa, puede Ud. pasar a cualquier hora hábil del día 30, por la mañana según indica Ud. en su precitada, y con mucho gusto suministraré todos los datos que desea Ud. obtener relacionados con la marcha de los asuntos de esta compañía.

"Muy attos. y S. S."

El peticionario no aprovechó la ocasión que de tal modo se le presentó, sino que en julio 3 se dirigió al presidente de la compañía en la forma siguiente:

"SEÑOR: Yo deseo tener, como accionista de la compañía, una lista de los colonos que están bajo contrato con la compañía; así como de los términos de cada contrato. También una lista de los colonos que entregan caña pero no tienen contrato; y en qué condiciones lo hacen.

"Suplicándole a Ud. una pronta orden a los efectos de que me sean entregadas las informaciones que solicito, quedo

"Muy atentemente,

"(Firmado)         CAY. COLL Y CUCHÍ."

Cuatro o cinco días después, sin previo aviso o petición para que se fijara alguna fecha conveniente, y sin hacer mención en absoluto del propósito, motivo o razón de su proceder, envió al presidente un representante personal con la siguiente carta:

"MUY SEÑOR MÍO: El portador de esta carta es mi suegro Don Juan Pujol, el cual va acompañado de mi taquígrafa para sacar unas notas que yo necesito del libro de actas de la compañía azucarera de la Carolina, y le suplico a Ud. que en las oficinas de dicha compañía le haga entrega de dicho libro y le provea de un sitio para que él pueda examinarlos.

"Muy atentamente,

"(Firmado)         CAY. COLL Y CUCHÍ."

No se permitió a Pujol que examinara el libro de referencia y el mismo día el peticionario inició un procedimiento de *mandamus.* El peticionario hace en su declaración la siguiente explicación del hecho de no haber examinado él los libros en la fecha y lugar que fueron fijados de conformidad con su propia petición:

"En estas condiciones, por amigos de una y otra parte, y más todavía por amigos del Sr. Arzuaga que por amigos míos, me pude yo enterar de ciertas operaciones que ocurrían que a mí no me satisfacían, y como accionista que soy, escribí una carta al presidente de la 'Carolina Sugar Company,' solicitándole una serie de datos, los cuales no me fueron enviados ni la carta fué contestada, y entonces escribí otra carta una hora de un día que fijaba en la carta, yo no recuerdo, para ir yo a examinar algo los libros de la compañía, pero en esos momentos se cruzó con mi carta el aviso de la compañía de junta general de accionistas para someter al examen de la junta las cuentas y las operaciones del año, e inmediatamente después del aviso recibí una carta del Sr. Arzuaga diciéndome que tenía a mi disposición, que podía ir a examinar los libros el día que le había fijado y a la hora indicada, cuando yo quisiere. Resultaba ese día uno o dos días antes de la junta general de accionistas, y entonces creí ingenuamente, inútil por completo mi solicitud y mi visita puesto que iba a haber una general de accionistas, donde se iban a presentar las cuentas y donde se iban a dar informes a los accionistas de la compañía, como no había mala fe ni propósito de ninguna especie por mi parte que perjudicara al Sr. Arzuaga, sino simplemente de saber yo si mi papel valía o no valía, decidí aguardar; la junta general de accionistas se convocó para las nueve de la mañana en los altos del almacén que ocupan los Señores Sobrinos de Ezquiaga, y a las diez o diez y media de la mañana empezamos la junta."

La carta dirigida a Behn, fechada en junio 25, junta con la otra correspondencia, *supra,* demuestra, sin embargo, que, de haber habido algún cruzamiento, fué probablemente la carta de Arzuaga rehusando la compra de las acciones del peticionario, y no el aviso de una junta de accionistas, la que se cruzó con la carta del peticionario a Arzuaga fechada en junio 26, solicitando acceso a los libros, y, además, que en o antes de junio 23, y por tanto con anterioridad a la soli-

citud, que hizo en junio 26, como se ha dicho, para que se fijara alguna hora el día 30 con el fin de hacer un examen de los libros de la corporación, el peticionario había recibido el debido aviso de la junta de accionistas que iba a celebrarse en julio 1°.

.Y en perfecta armonía con el espíritu del requerimiento hecho por medio del agente Pujol, que fué enviado sin ser anunciado previamente, apareció del examen de repreguntas, en síntesis y de un modo significativo, cuál fué la actitud asumida por el peticionario desde el principio y durante toda la historia de esta controversia.

"P. Y ¿por qué no fué Ud. el día anterior, el día 30, cuando el Sr. Arzuaga le dijo en esa carta número no sé qué, que Ud. podía venir ese día para examinar los libros?—R. Porque yo manejo mis intereses de acuerdo con mi voluntad, y como esos son mis intereses creí que podía examinarlos cuando a mí viniera en gana, y no cuando le viniera en ganas a quienes los están administrando por confianza que se puso en ellos en una junta."

Cualquiera que haya sido el móvil del peticionario, los procedimientos por él adoptados desde la fecha de su primera carta al Sr. Acuña, *supra,* hasta el día en que fué presentada su solicitud de *mandamus,* fueron singularmente agresivos, y, para decir lo menos, escasamente tendieron a inspirar en la mente del demandado, apelante, una gran confianza en la buena fe, honradez y sinceridad de propósito, que se alegan ahora haber sido los motivos que impulsaron el deseo de examinar los documentos y papeles de la corporación. El demandado y apelante, sin hacer objeción o tener reservas de ninguna clase, sin tratar de establecer restricción o limitación alguna a la mayor libertad de acción posible por parte del peticionario y apelado, y sin vacilar por un sólo momento u ocasionar ninguna demora, accedió a la primera demanda que se le hizo directamente, y no obstante el tono áspero y amenazante de ésta, convino cortésmente en la fecha que arbitrariamente fijó el peticionario, dejando

enteramente a su elección el fijar la hora, y además estuvo voluntariamente gustoso en suministrarle todos los informes que pudiera desear en relación con la marcha de los asuntos de la corporación. El peticionario, sin presentar ninguna explicación o excusa satisfactoria, habiendo dejado de comparecer en absoluto en la fecha y lugar por él mismo fijados y convenidos con el demandado, tiene poca razón para quejarse de que Pujol no fuera recibido con más atención, habiendo llegado, como lo hizo, sin avisar previamente su llegada, sin tener en cuenta la conveniencia del demandado, y sin hacer siquiera ninguna indicación con el fin de fijar una fecha precisa para el pretendido examen, o indicar en alguna forma el motivo, propósito o razón de su petición.

En vista de las circunstancias, creemos que toda discusión sobre proposiciones abstractas de ley que envuelvan el derecho de los accionistas a examinar los libros de la corporación sería superflua. Los autos no demuestran que se hiciera tal solicitud de una oportunidad para examinar los documentos de la corporación, ni tal negativa de parte del demandado de permitir ese examen, que sostuvieran la expedición de un auto de *mandamus*. No tenemos motivo para creer que el apelado rehusaría acceder a cualquier solicitud propia y razonablemente hecha, pero, sea esto como fuere, no es posible que pueda llegarse a una resolución definitiva de las respectivas alegaciones de las partes respecto a cuáles son los preceptos de la ley que deben regir en este caso, hasta tanto se haya presentado en forma adecuada una petición clara y precisa y el privilegio así demandado haya sido negado.

La sentencia apelada debe ser revocada.

> *Revocada la resolución apelada y anulado el auto de* mandamus *expedido.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.